UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

N⁰ 08 Civ. 10584 (RJS)

---

ANEGADA MASTER FUND, LTD., *et al.*,

Plaintiffs,

VERSUS

PXRE GROUP LTD., *et al.*,

Defendants.

---

MEMORANDUM AND ORDER
January 26, 2010

---

RICHARD J. SULLIVAN, District Judge:

Plaintiffs, a group of nineteen hedge funds,[1] bring this action against PXRE Group, Ltd. ("PXRE"), Argo Group International Holdings, Ltd., Jeffrey L. Radke, Guy D. Hengesbaugh, and John M. Modin (collectively, "Defendants"), asserting claims for violations of sections 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l(a)(2), and 77(o).

---

[1] Specifically, Plaintiffs consist of the following entities: Anegada Master Fund, Ltd., Tonga Partners, L.P., Endicott Partners, L.P., Endicott Partners II, L.P., Endicott Offshore Investors, Ltd., Engineers Joint Pension Plan & Trust, International Bancshares Corporation Employees Profit Sharing Plan & Trust, EHL Endicott Limited, Royal Capital Value Fund, L.P., Royal Capital Value Fund (QP), L.P., Royalcap Value Fund, Ltd., Seneca Capital L.P., Scopia Partners L.L.C., Scopia Partners QP L.L.C., Scopia PX L.L.C, Scopia Long L.L.C., Scopia International Limited, Scopia PX International Limited, and The Coast Fund L.P. (*See* Am. Compl. ¶¶ 24-26.) The Court will refer to these entities throughout this Memorandum and Order collectively as "Plaintiffs."

Plaintiffs also assert state law claims for fraud and negligent misrepresentation.

Before the Court is Defendants' motion to dismiss Plaintiffs' amended complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants Defendants' motion as it pertains to the federal claims, declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, and grants Plaintiffs leave to amend.

I. BACKGROUND

The following facts are taken from the amended complaint. The Court also considers any written instrument attached to the amended complaint, statements or documents incorporated into the amended complaint by reference, legally required public disclosure documents filed with the Securities and Exchange Commission (the "SEC"), and documents upon which Plaintiffs relied in bringing suit. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). The Court assumes all alleged facts to be true for the purpose of deciding the motions before it and construes all alleged facts in the light most favorable to Plaintiffs. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006).

A. Facts

In an Opinion and Order dated March 4, 2009, the Court dismissed a putative class action brought against PXRE, Jeffrey L. Radke, John M. Modin, and Guy D. Hengesbaugh arising out of the same series of underlying events. *See In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009) (the "Class Case").[2] The Court assumes the parties' familiarity with the underlying facts of the Class Case, and will only recount the factual allegations relevant to this decision.

As set forth in detail in the Class Case, and reiterated in Plaintiffs' amended complaint in this action, PXRE is a reinsurance company that "suffered substantial losses following Hurricanes Katrina and Rita." (Am. Compl. ¶ 2.)[3] Plaintiffs allege that, as a result of these losses, Defendants "needed to raise significant additional funds to pay out the claims that were being made by its policyholders." (*Id.*) Plaintiffs further allege that, in order to raise these required funds, PXRE engaged in two relevant securities transactions: one public offering, and one private offering. (*Id.* ¶¶ 2, 8, 44-46.)

The public offering consisted of the sale of 8,843,500 shares of common stock, which PXRE announced that it had completed on October 7, 2005. (*Id.* ¶¶ 8, 45.) In connection with this public offering, on or about October 5, 2005, PXRE filed a prospectus with the SEC. (*Id.* ¶¶ 8, 47; *see* Briody Aff. Ex. E (the October 5, 2005 Prospectus).)

The private offering consisted of the sale of 375,000 of Series D Perpetual Non-Voting Preferred Shares of PXRE (the "Preferred Shares"). (Am. Compl. ¶¶ 8, 46.) PXRE issued a press release announcing that it had

---

[2] The one Defendant named in this action and *not* in the Class Case is Argo Group International Holdings, Ltd., which Plaintiffs allege is the "successor in interest to PXRE." (Am. Compl. ¶ 27.)

[3] "Hurricanes Katrina and Rita made landfall on August 29, 2005 and September 24, 2005, respectively." (Am. Compl. ¶ 1 n.1.)

2

completed this private placement made pursuant to section 4(2) of the Securities Act on October 7, 2005. (*Id.*)

Plaintiffs were among the purchasers of the Preferred Shares. (*Id.* ¶¶ 1, 2, 46.) Plaintiffs allege that they were provided a Private Placement Memorandum, dated September 28, 2005 (the "Private Placement Memorandum"), in connection with this purchase. (*Id.* ¶¶ 8, 48; *see* Briody Aff. Ex. B (the Private Placement Memorandum).)[4] The first page of the Private Placement Memorandum states that:

> The . . . Preferred Shares . . . of PXRE . . . described herein *are being offered to a limited number of qualified institutional buyers . . . as defined in Rule 144A under the Securities Act* . . . and have not been and, except as otherwise set forth herein, will not be, registered under the Securities Act or any state securities laws. The . . . Preferred Shares are being offered in reliance upon the exemption from registration provided by [s]ection 4(2) of the Securities Act.

(Briody Aff. Ex. B. at (i) (emphasis added).)

### B. Procedural History

Plaintiffs commenced this action by filing their initial complaint on December 4, 2008. (Doc. No. 1.) On December 18, 2008, the Court accepted this case as related to the Class Case. (Doc. No. 4.) After the Court held a pre-motion conference on March 3, 2009 (Doc. No. 29), Plaintiffs filed their amended complaint on April 6, 2009 (Doc. No. 33). Defendants filed their motion to dismiss the amended complaint and a memorandum of law in support of that motion on May 7, 2009. (Doc. No. 38.) On June 16, 2009, Plaintiffs filed their memorandum of law in opposition to Defendants' motions to dismiss. (Doc. No. 39.) Defendants filed their reply memorandum of law on July 20, 2009. (Doc. No. 41.)

### II. STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must draw all reasonable inferences in Plaintiffs' favor. *See ATSI Commc'ns*, 493 F.3d at 98; *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation

---

[4] The Court takes judicial notice of the entire September 28, 2005 Private Placement Memorandum. In considering a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of "any statements or documents incorporated in [the complaint] by reference." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). The September 28, 2005 Private Placement Memorandum is extensively quoted in Plaintiffs' amended complaint, and is therefore "integral" to Plaintiffs' claims. *See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). Further, there is no dispute regarding the authenticity, accuracy, or relevance of the September 28, 2005 Private Placement Memorandum. *Cf. Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006) (noting that consideration of materials outside the complaint is permissible on a 12(b)(6) motion if the documents are integral to the complaint, it is clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and the relevance of the document is undisputed).

3

omitted). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Therefore, this standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949.

Ultimately, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. On the other hand, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Applying this standard, if Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

### III. DISCUSSION

#### A. Section 12(a)(2) of the Securities Act

Section 12(a)(2) creates liability for any person who offers or sells a security by means of a prospectus or oral communication that includes a material misrepresentation or omission. *See* 15 U.S.C. § 77l(a)(2); *see also In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 434 (S.D.N.Y. 2009).[5] A plaintiff bringing a claim pursuant to section 12(a)(2) need not plead scienter, reliance, or causation. *See In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d at 434-35. Rather, to plead adequately a claim under section 12(a)(2), a plaintiff need only allege that (1) the defendant sold or offered a security; (2) by means of a prospectus or oral communication; (3) that included an untrue statement of material fact or omitted a material fact necessary to make such statements not misleading. *Id.* at 435.

The question presented by this case involves the second of these three requirements — that a defendant sell a security "by means of a prospectus or oral communication." In *Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995), the Supreme Court interpreted section 12(a)(2)'s "prospectus" requirement, and resolved a circuit split by holding that section 12(a)(2) does not apply to a private contract for a secondary market sale of securities.[6] In so finding, the Supreme

---

[5] Section 12(a)(2) provides, in relevant part:

> Any person who . . . (2) offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in light of the circumstances under which they were made, not misleading . . . , shall be liable . . . to the person purchasing such security from him, who may sue . . . to recover the consideration paid for such security.

15 U.S.C. § 77l(a)(2).

[6] Prior to *Gustafson*, the Second Circuit had held that section 12(a)(2) "applied to private as well as public offerings of securities." *Metromedia Co. v. Fugazy*,

4

Court held that the word "prospectus" refers to "documents related to public offerings by an issuer or its controlling shareholders," namely, documents that "must include the information contained in the registration statement." *Id.* at 569 (internal quotation marks omitted). The Supreme Court thus concluded that liability pursuant to section 12(a)(2) "cannot attach unless there is an obligation to distribute the prospectus in the first place." *Id.* at 571.[7]

In *Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005), the Second Circuit found that "the rationale for [the] decision in *Gustafson*, which involved a private secondary sale, necessarily precludes a [s]ection 12(a)(2) claim with respect to *any private securities transaction*." *Id.* at 148 (emphasis added). Specifically, the *Yung* court found that "*Gustafson*'s definition of a prospectus as 'a document that describes a *public offering* of securities' compels the conclusion that a [s]ection 12(a)(2) action cannot be maintained by a plaintiff who acquires securities through a private transaction, whether primary or secondary." *Id.* at 149 (quoting *Gustafson*, 513 U.S. at 584 (emphasis in original)). By definition, "[a] private offering is not effected 'by means of a prospectus' because *Gustafson* states that [s]ection 12(a)(2) liability cannot attach unless there is an 'obligation to distribute a prospectus,' and there is no 'obligation' to distribute a document that describes a public offering to a private purchaser." *Id.* (quoting *Gustafson*, 513 U.S. at 571). Thus, in *Yung*, the Second Circuit held that a section 12(a)(2) action cannot be maintained by a plaintiff who acquires securities through a private transaction even where the marketing of the securities relied on a prospectus prepared for a public offering. *Id.* at 149-150.

The transaction at issue in this case — the sale of the Preferred Shares to Plaintiffs — was clearly styled as, and intended to be, a private placement free from the "prospectus" requirement that attaches to registered, public offerings under section 5 of the Securities Act. Section 4(2) of the Securities Act states that section 5's registration requirement "shall not apply to . . . transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). One such transaction "not involving any public offering" under section 4(2) is set forth by SEC Rule 144A, which provides that issuers may offer securities in private placements to "qualified institutional buyers" — a term of art that is defined to include certain entities that "own[] and invest[] on a discretionary basis at least $100 million in securities." 17 C.F.R. § 230.144A(7)(a); *accord RSL Cmmc'ns PLC v. Bildirici*, 649 F. Supp. 2d 184, 188 n.5 (S.D.N.Y. 2009).[8]

Here, the first page of the Private Placement Memorandum makes plain that Defendants intended to effectuate a private placement of securities pursuant to section

---

983 F.2d 350, 361 (2d Cir. 1992). *But see Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682 (3d Cir. 1991) (holding that section 12(a)(2) is inapplicable to secondary transactions).

[7] "The phrase 'oral communication' [as used in section 12(a)(2)] . . . refers only to oral communications relating to a prospectus, and therefore does not change the analysis." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 625 (S.D.N.Y. 2007) (citing *Gustafson v. Alloyd Co.*, 513 U.S. 561, 567-68 (1995)).

[8] Rule 144A specifically provides that securities sold in compliance with its provisions "shall be deemed not to have been offered to the public." 17 C.F.R. § 230.144A(7)(a).

5

4(2) and Rule 144A. As noted above, the Private Placement Memorandum states that:

> The . . . Preferred Shares . . . of PXRE . . . described herein *are being offered to a limited number of qualified institutional buyers . . . as defined in Rule 144A under the Securities Act* . . . and have not been and, except as otherwise set forth herein, will not be, registered under the Securities Act or any state securities laws. The . . . Preferred Shares are being offered in reliance upon the exemption from registration provided by [s]ection 4(2) of the Securities Act.

(Briody Aff. Ex. B at (i) (emphasis added); *see* Am. Compl. ¶ 46 ("On October 7, 2005, [PXRE] issued a press release announcing that it had also completed the sale of 375,000 of its [Preferred Shares] in a *private placement* pursuant to [s]ection 4(2) of the Securities Act of 1933." (emphasis added)); *see also id.* ¶¶ 8, 78, 89, 110, 125 (referring to the sale of the Preferred Shares as a "[p]rivate [p]lacement").) Thus, on the face of the amended complaint, Plaintiffs' section 12(a)(2) claim must fail.

Notwithstanding this facial deficiency, Plaintiffs invoke the so-called "integration" doctrine to argue that Defendants' private offering of the Preferred Shares was not exempt from liability under section 12(a)(2).[9]

This case therefore turns on the concept of integration. The starting point for any analysis on this topic is the SEC's 1962 guidance "regarding the availability of the exemption from the registration requirements of [s]ection 5 of the Securities Act of 1933." SEC Release No. 33-4552, 1962 WL 69540, at *1 (Nov. 6, 1962). Explaining the relationship between integration and the private offering exemption contained in section 4(2) for "transactions by an issuer not involving any public offering," the SEC first cited the Supreme Court's landmark decision in *SEC v. Ralston Purina Co.*, 346 U.S. 119 (1953), which held that the availability of the "private offering exemption" contained in section 4(2) of the Securities Act "should turn on whether the particular class of persons affected need the protection of the [Securities] Act. An offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering.'" *Id.* at 125. The SEC then proceeded to articulate five factors that it considered "relevant to [the] question of integration": "whether (1) the different offerings are part of a single plan of financing, (2) the offerings involve issuance of the same class of security, (3) the offerings are made at or about the same time, (4) the same type of consideration is to be received, [and] (5) the offerings are made for the same general purpose." SEC Release No. 33-4552, 1962 WL 69540, at *3. Beyond noting the factors' "relevance," however, the SEC provided no guidance as to how these factors should be weighed or considered in relation to one another.

In 1992, the SEC issued further guidance on the question of integration, in the form of a

---

[9] The concept of integration was developed to prevent the circumvention of section 5's registration requirements, by, for example, splitting a single issuance of stock that should be registered between a registered offering and an otherwise exempt offering. Accordingly, if "integration" applies, a self-styled private offering would constitute a public offering, the offering documents would constitute a "prospectus," and section 12(a)(2) liability would attach to any misrepresentations contained in the offering documents.

"no action" letter, which purported to clarify an "informal position" that the SEC had earlier promulgated. *See* SEC No Action Letter re: Black Box Inc., 1992 WL 55818, at *1 (Feb. 28, 1992). That prior position had held that a contemporaneous private placement of convertible debentures to 35 "qualified institutional buyers," as defined in Rule 144A, and a public offering of common stock did not constitute an integrated public offering. *See id.* at *1-2. The 1992 SEC guidance confirmed that even in a situation "where a registered offering would otherwise be integrated with an unregistered offering," the private, unregistered offering should not be deemed integrated with the public, registered offering if the private offering was made to (1) "persons who would be qualified institutional buyers for purposes of Rule 144A" and (2) "no more than two or three large institutional accredited investors." *Id.* at *1.

In short, the SEC's 1992 guidance stands for the proposition that integration between a contemporaneous unregistered private offering and a registered public offering may be controlled by a sixth factor, rather than any of the five factors articulated by the SEC in its 1962 guidance — specifically, the nature and number of offerees of the unregistered transaction. If an offering is made only to "persons who would be qualified institutional buyers for purposes of Rule 144A" and to "no more than two or three large institutional accredited investors," the two offerings shall not be deemed to be integrated.

As noted above, "qualified institutional buyer" is defined by Rule 144A to include certain entities that "own[] and invest[] on a discretionary basis at least $100 million in securities." 17 C.F.R. § 230.144A(7)(a). Although the term "large institutional accredited investor" is not specifically defined, the term "accredited investor" is defined by Rule 501 of Regulation D as "any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person." 17 C.F.R. § 230.501(a). Five of the eight categories that follow relate exclusively to "institutions." These categories are:

> (1) Any bank as defined in section 3(a)(2) of the Act, or any savings and loan association or other institution as defined in section 3(a)(5)(A) of the Act whether acting in its individual or fiduciary capacity; any broker or dealer registered pursuant to section 15 of the Securities Exchange Act of 1934; any insurance company as defined in section 2(13) of the Act; any investment company registered under the Investment Company Act of 1940 or a business development company as defined in section 2(a)(48) of that Act; any Small Business Investment Company licensed by the U.S. Small Business Administration under section 301(c) or (d) of the Small Business Investment Act of 1958; any plan established and maintained by a state, its political subdivisions, or any agency or instrumentality of a state or its political subdivisions, for the benefit of its employees, if such plan has total assets in excess of $5,000,000; any employee benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 if the investment decision is made by a plan fiduciary, as defined in section 3(21) of such act,

7

which is either a bank, savings and loan association, insurance company, or registered investment adviser, or if the employee benefit plan has total assets in excess of $5,000,000 or, if a self-directed plan, with investment decisions made solely by persons that are accredited investors;

(2) Any private business development company as defined in section 202(a)(22) of the Investment Advisers Act of 1940;

(3) Any organization described in section 501(c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000;

(4) Any trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in § 230.506(b)(2)(ii); and

(5) Any entity in which all of the equity owners are accredited investors.

17 C.F.R. §§ 230.501(a)(1), (2), (3), (7), (8).

Accordingly, a "large institutional accredited investor" would be required to fit within one of these five categories, and in addition, would have to be "large."

In this case, Plaintiffs allege facts that the Preferred Sales were offered to "qualified institutional buyers," but fail to allege any facts that the Preferred Sales were offered to *any*, let alone "more than two or three large institutional accredited investors." The only allegations pertaining to what entities received the private unregistered offering are found in the text of the Private Placement Memorandum, which is incorporated into Plaintiffs' amended complaint by reference, *see supra* note 4. The Private Placement Memorandum states that the sale of the Preferred Shares was made to "qualified institutional buyers" under Rule 144A, and provides no other details as to the nature of the offerees. (*See* Briody Aff. Ex. B at (i).) As the sole allegations on this point, the Court finds that the unregistered, private offering of the Preferred Shares is not integrated with the public, registered offering of common shares.

As such, Plaintiffs' section 12(a)(2) claim must fail. Absent integration, no prospectus requirement attaches to the sale of the Preferred Sales to Plaintiffs, and under *Gustafson* and *Yung*, the legal obligation to distribute a prospectus in connection with an offering serves as the predicate for section 12(a)(2) liability. *See, e.g.*, *In re Giant Interactive Group, Inc. Sec. Litig.*, No. 07 Civ. 10588 (RWS), 2009 WL 2432373, at *11 (S.D.N.Y. Aug. 7, 2009) (noting that under *Yung*, "the relevant inquiry in determining whether [s]ection 12(a)(2) liability . . . attach[es] [is] whether the sale of the security carrie[s] with it the legal obligation to provide a prospectus"); *Gotham Holdings, LP v. Health Grades, Inc.*, 534 F. Supp. 2d 442, 445 (S.D.N.Y. 2008) ("Liability under § 12(a)(2) attaches only if [the defendant] was under an obligation to distribute a prospectus in selling its shares.").

In light of the nature of this deficiency, however, the Court will grant Plaintiffs leave to re-plead facts setting forth, in appropriate

8

detail, the nature of the entities to which the Preferred Sales were offered. At this stage of the litigation, the Court does not find that amendment would be futile, or motivated by undue delay, bad faith, or any other dilatory motive. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-02 (2d Cir. 2007).

### B. Section 15 of the Securities Act

Section 15 establishes "control person" liability for a violation of section 12(a)(2). *See* 15 U.S.C. § 77o.[10] In order to state a claim for liability under section 15 of the Securities Act, a plaintiff must allege "(a) a primary violation by a controlled person, and (b) control by the defendant of the primary violator." *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 637 (S.D.N.Y. 2007). Because Plaintiffs have failed to plead a primary violation of section 12(a)(2), Plaintiffs' claim under section 15 is also dismissed.

### C. State Law Claims

The Court has dismissed all claims over which it has original subject matter jurisdiction. (*See* Compl. ¶ 21.) Pursuant to 28 U.S.C. § 1367(c)(3), "the district court may decline to exercise supplemental jurisdiction" over state claims if "the district court has dismissed all claims over which it has original jurisdiction." In determining whether to continue to retain jurisdiction, district courts consider factors such as judicial economy, convenience, fairness, and comity. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191 (2d Cir. 1996). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *accord Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ("When all bases for federal jurisdiction have been eliminated from a case so that only pendent state claims remain, the federal court should ordinarily dismiss the state claims.").

The Court finds no reason to depart from this usual rule. The federal claims brought pursuant to the Securities Act have been dismissed at an early stage of the litigation, and the parties have conducted no discovery. The Court thus finds it appropriate to decline to exercise its supplemental jurisdiction. Accordingly, the Court dismisses Plaintiffs' state law claims for negligent misrepresentation and fraud without prejudice to renewal in state court.

---

[10] Section 15 provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77 l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.

## IV. Conclusion

For the foregoing reasons, the Court grants Defendants' motion to dismiss Plaintiffs' federal claims brought pursuant to the Securities Act and declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. As further stated, Plaintiffs are granted leave amend to correct the deficiencies noted in this Memorandum and Order. Accordingly, Defendants' motion will be granted in its entirety, without prejudice to renewal after Plaintiffs' amendment. Plaintiffs shall file their second amended complaint no later than Monday, February 22, 2010.

The Clerk of Court is instructed to terminate the motion located at docket number 38.

SO ORDERED.

/s/ Richard J. Sullivan

RICHARD J. SULLIVAN
United States District Judge

Dated: January 26, 2010
New York, New York

* * *

Plaintiffs are represented by Allan Steyer and Simon R. Goodfellow, Steyer Lowenthal Boodrookas Alvarez & Smith LLP, One California Street, Third Floor, San Francisco, California 94111, and David Avi Rosenfeld, Mario Alba, Jr., and Samuel Howard Rudman, Coughlin Stoia Geller Rudman & Robbins, LLP, 58 South Service Road, Suite 200, Melville, New York 11747. Defendants PXRE Group Ltd. and Argo Group International Holdings, Ltd. are represented by Bruce Domenick Angiolillo, John Christopher Briody, and Jonathan K. Youngwood, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017. Defendant Jeffrey L. Radke is represented by Scott N. Auby and Jonathan Rosser Tuttle, Debevoise & Plimpton LLP, 555 13th Street, N.W., Washington, DC 20004. Defendant Guy D. Hengesbaugh is represented by Brad Scott Karp Jonathan Hillel Hurwitz, and Joshua Dillon Anders, Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019. Defendant John M. Modin is represented by M. William Munno, Seward & Kissel LLP, One Battery Park Plaza, New York, New York 10004.